**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-cv-10105 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| P.O. GARCIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND OPINION ORDER**

Plaintiff Victoria Smith brings this civil rights action under 42 U.S.C. § 1983 alleging claims for unlawful entry and seizure, excessive force, failure to intervene, false arrest, and malicious prosecution against the individual Defendants, all of whom are police officers for the City of Chicago. Plaintiff also brings claims against the City itself for indemnification and under the doctrine of *respondeat superior* as to the state law malicious prosecution claim. Before the Court are Plaintiff's motions *in limine* [52] and Defendants' motions *in limine* [51].

For the reasons set forth below, Plaintiff's motions *in limine* [52] are granted in part and denied in part: the Court grants (and provisionally grants) Plaintiff's motions Nos. 1, 2, 3, 4, 6, 7, 8, and 9; the Court grants in part and denies in part Plaintiff's motions No. 5. Defendants' motions *in limine* [51] also are granted in part and denied in part: the Court grants (and provisionally grants) Defendants' motions Nos. 3, 4, 6, 7, 8, 9, 10, 11, 12, and 15; the Court grants in part and denies in part Defendants' motions Nos. 2, 5, 13, and 17; the Court denies Defendants' motion Nos. 14 and 16; and the Court defers final ruling on Defendants' motion No. 1. This case remains set for a jury trial to commence on January 22, 2018.

# I.     Legal Standard

A motion *in limine* is a motion made "at the outset" or "preliminarily." BLACK'S LAW DICTIONARY 803 (10th ed. 2014).  Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997).  The party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).  The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

# II.    Plaintiff's Motions *in Limine* [52]

## A.     Plaintiff's Motion No. 1: Jury as Taxpayers

Plaintiff moves to bar any arguments that appeal to jurors' pecuniary interests as taxpayers.  Defendants have no objection.  This motion is granted.

## B.     Plaintiff's Motion No. 2: Bar Non-Party Witnesses from Courtroom

Plaintiff moves to exclude non-party witnesses from being present in the courtroom prior to their testimony.  Defendants do not object to this motion.  This motion is granted.  Non-party witnesses from either side are not to be present in the courtroom prior to their testimony.

## C.     Plaintiff's Motion No. 3: Plaintiff's Prior Bad Acts

Plaintiff moves to bar reference to (1) her prior arrests that did not result in conviction and (2) any criminal convictions she has obtained.  Defendants assert that they do not intend to

introduce evidence of Plaintiff's prior arrests or convictions unless Plaintiff opens the door. Defendants anticipate that Plaintiff may testify that she suffered emotional trauma as a result of the encounter with the Defendant police officers that is at the heart of this litigation. Specifically, Defendants cite Plaintiff's deposition, at which she testified that as a result of the incident, she has fear and anxiety about police officers. Defendants observe that Plaintiff has had many other encounters with police officers—as evidenced, at a minimum, by Plaintiff's arrest record—and submit that they should be allowed to explore at trial whether any of those other encounters, both before and after the incident at issue here, undermine Plaintiff's claim of emotional distress. Defendants insist that they do not seek to admit any substantive evidence relating to the arrests and/or convictions. Rather, they simply wish to elicit testimony about these encounters between Plaintiff and police officers as impeachment.

Depending on the extent of Plaintiff's testimony on her alleged emotional trauma arising out of this single encounter, Defendants' proposed impeachment may amount to major overkill. Parading before the jury a series of questions about five other arrests, only one of which appears to have resulted in a conviction, presents an obvious Rule 403 prejudice issue. It also could result in a lengthy sideshow, during which Defendants would try to establish that Plaintiff's other police encounters were the *real* source of her emotional trauma and Plaintiff would point out on redirect the ways in which those other encounters differed from the one involved in this case. To the extent that Defendant felt the jurors could infer that the prior "encounters" were arrests, she might also feel the need to show that all but one of those arrests did not result in a conviction. The substantial likelihood of prejudice to Plaintiff and/or confusion of the issues and waste of the jury's time therefore counsels in favor of excluding evidence of these prior police encounters.

However, the Court's ruling includes two caveats. The first is that Plaintiff may open the door to some impeachment should her testimony belabor or embellish the emotional trauma to which she testified at her deposition. Put slightly differently, overkill may occur on Plaintiff's side as well, and if it does fairness may dictate allowing Defendants some latitude to cross-examine on the scope of Plaintiff's other police encounters. If Defendants feel that Plaintiff is about to cross (or has crossed) the line, they are directed to request an immediate sidebar so that the issue can be discussed outside the presence of the jury. The second pertains to the similarity (or lack thereof) between the circumstances of the encounter between Plaintiff and Defendants at issue here and the circumstances of any of her prior police encounters. See, e.g., *Blackwell v. Kalinowski*, 2011 WL 1557542, at *4 (N.D. Ill. Apr. 25, 2011) (recognizing that "[w]hile there is case law in the Northern District of Illinois suggesting that evidence of prior arrests is relevant to a claim for emotional distress, other courts in this district have found that 'to be relevant, the arrests must be substantially similar and the court must conduct a prejudice analysis'" (quoting *Moore v. City of Chicago*, 2008 WL 4549137, *1 (N.D. Ill. Apr. 15, 2008); citing *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 854–55 (N.D. Ill. 2001); *Caldwell v. City of Chicago*, 2010 WL 380696, *1 (N.D. Ill. Jan. 28, 2010)). As Plaintiff points out, the arrest at issue in this case took place in her home, which she contends was unlawfully entered and searched. That is not the typical context in which citizens and police encounter each other, and thus (as Plaintiff acknowledges) another arrest (or interaction) under similarly unusual circumstances would be more probative than an arrest (or interaction) outside the home. If Defendants can show a similarity of circumstances, then the Court will revisit the Rule 401/403 analysis outlined above. See, e.g., *Blackwell*, 2011 WL 1557542, at *4 (concluding that because "it is unclear whether [plaintiff's] arrests involve facts similar to the arrest at issue" and "the Court would still have to

conduct a prejudice analysis," the court could not "determine outside of the context of trial whether evidence of [plaintiff's] prior arrests" is admissible; ordering defendants to "request a sidebar before attempting to introduce any evidence relating to [plaintiff's] prior arrests at trial). To the extent that Defendants wish the Court to take a closer look at any of Plaintiff's prior arrests on this basis, they must provide the details in support of their request prior to opening statements.

In short, Plaintiff's motion is provisionally granted, but subject to the caveats noted above which may result in the Court revisiting this issue during the trial.

### D.     Plaintiff's Motion No. 4: Character Evidence of Defendants

Defendants do not oppose Plaintiff's motion to bar evidence of commendations or awards Defendants may have received in the course of their employment, and thus it is granted.

### E.     Plaintiff's Motion No. 5: Police Officers Risking Their Lives

Plaintiff moves *in limine* to bar Defendants from arguing that "police officers risk their lives on the job."  Plaintiff argues that this type of general statement is not relevant to the instant case and would divert the jury's attention away from the facts of the case.  Alternatively, Plaintiff contends that if Defendants are allowed to question witnesses with regard to the risk involved in police work, Defendants should be barred from making any argument related to the general risks of police work during closing arguments.  Defendants respond that they must be permitted to testify about the circumstances that brought them in contact with Plaintiff in the first place—namely, the placing of a 911 call.  Given that context, Defendants submit that they must be allowed to testify as to the actions that they take when they enter a home after receiving a 911 call, including the steps to secure the occupants of the premises, for their own safety and for the safety of the occupants.

The Court agrees with Defendants that the fact that they were responding to a 911 call is relevant to their decisionmaking process and may have affected how they responded at the time of their encounter with Plaintiff. Thus, Plaintiff's motion is denied in part to that extent, and Defendants will be permitted to discuss the totality of the circumstances—including their states of mind—leading up to, during, and immediately after their dispatch to Plaintiff's home. See *Martinez v. City of Chicago*, 2016 WL 3538823, at *25 (N.D. Ill. June 29, 2016) (denying similar motion); *Jones v. City of Chicago*, 2017 WL 413613, at *8 (N.D. Ill. Jan. 31, 2017) (concluding that police officer defendants would be permitted to make arguments about the requirements of their profession to the extent they are relevant to the reasonableness of their conduct). But that testimony must remain focused on those circumstances, and may not stray into the dangers of the job generally or in other circumstances. Finally, in regard to closing arguments, Defendants' invocation of the general risks of responding to 911 calls to which the officers have testified (assuming they do) is not so far beyond the scope of relevance or so prejudicial that it requires exclusion under Rules 401 or 403. *Martinez*, 2016 WL 3538823, at *25. That being said, the Court will entertain objections at trial if either side strays beyond the bounds of acceptable argument at closing.

**F.**      **Plaintiff's Motion No. 6: Defendants Wearing Uniforms and Medals at Trial**

Plaintiff seeks to bar Defendants and any other police officers who may be called to testify from wearing their police uniforms and medals at trial. Plaintiff argues that the uniforms and medals would constitute impermissible character evidence, may cast Defendants in a favorable light and suggest that the officers have greater credibility due to their positions as police officers, and have no bearing on the issue of whether Defendants violated Plaintiff's constitutional rights. Defendants agree that the Defendant officers will not wear their uniforms

or any medals at trial. Thus, the motion is granted as unopposed as to the Defendant officers. Defendants add that some non-party police officer witnesses may be coming to testify while on duty and therefore may be uniformed. That is acceptable and will create no prejudice to Plaintiff in that the jurors will learn that these individuals are police officers. See *Case v. Town of Cicero*, 2013 WL 5645780, at *4 (N.D. Ill. Oct. 16, 2013) (permitting officers to wear uniforms at trial but not medals or protective gear); *Strong v. Clark*, 1990 WL 70421, at *2 (N.D. Ill. May 4, 1990) (permitting witnesses to wear uniforms to trial because of the inconvenience to the witnesses of carrying a change of clothes and the fact that the jury will learn from testimony that the witnesses are police officers).

### G. Plaintiff's Motion No. 7: Police Databases

Plaintiff moves in limine to bar Defendants from gaining an "unfair advantage" by accessing certain databases to investigate the background of jurors, including CLEAR (Citizen Law Enforcement and Reporting) and LEADS (Law Enforcement Agencies Data System). "The propriety of allowing a litigant in a civil case to access police databases to perform background checks on potential jurors and to use such information during *voir dire* is an unsettled question in this district." *Dyson v. Szarzynski*, 2014 WL 7205591, at *2 (N.D. Ill. Dec. 18, 2014). The Court is sensitive to the potential pitfalls of allowing background checks (*e.g.*, empowering jurors to conduct their own background checks of the parties, creating an imbalance of information among the parties), as well as the potential benefits (*e.g.*, the importance of a rigorous and candid *voir dire* process), as discussed in great detail in the *Dyson* opinion. *Id.* at *2–4. On balance, the Court concludes that (1) the potential negative consequences for the judicial system as a whole and (2) the logistical hurdles to accomplishing this background search in a timely fashion favor excluding these proposed background checks during the *voir dire*. See

also *Gonzalez v. Olson*, 2015 WL 3671641, at *8 (N.D. Ill. June 12, 2015) ("Defendants' asserted justification that jurors will lie about their criminal history or arrest record is not such a pervasive problem that it needs to be addressed by conducting criminal background checks on all jurors."). As Judge Lee has written, "to the extent Defendants are concerned about the extent to which members of the venire panel may be less than forthcoming in answering questions about their arrest records, this concern can be addressed through careful management of the voir dire process." *Giuffre v. Jefferson,* Case No. 14-cv-3692, Order [docket entry 167], at 2 (N.D. Ill. Mar. 17, 2017).

### H. Plaintiff's Motion No. 8: Arrest Records of Plaintiff and Nonparty Witnesses

Plaintiff seeks to bar any reference to the prior arrest records of Plaintiff and any witnesses. Defendants have no objection. The motion is granted.

### I. Plaintiff's Motion No. 9: High Crime Area

Finally, Plaintiff requests that the Court bar evidence or testimony that the area in which the incident took place is a "high-crime area." This motion, too, is unopposed and granted.

## III. Defendants' Motions *In Limine*

### A. Defendants' Motion in Limine No. 1: Motion to Bar Reference to Any Violation of Police Regulations

Defendants request an order excluding any mention of the Chicago Police Department's General Orders, rules or policies and any violation thereof. Defendants argue that the Seventh Circuit has consistently held that the violation of departmental policies or orders is irrelevant to a Fourth Amendment claim, citing *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). In *Thompson*, the Seventh Circuit explained, that "the fact that excessive force is 'not capable of precise definition' necessarily means that, while the [Chicago Police Department's] General Order may give police administration a framework whereby commanders may evaluate officer

conduct and job performance, it sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Id*. at 454. The court of appeals went on to state that "[w]hat's more, this court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'" *Id*. (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). Accordingly, the court held that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id.* at 454; see also *Whren v. United States*, 517 U.S. 806, 815 (1996) (concluding that, because police rules, practices and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the reasonableness of police conduct). The court in *Thompson* also concluded that the evidence was properly excluded under Rule 403 with respect to the plaintiff's state law claim. See *Thompson*, 472 F.3d at 456–57. In addition, the court expressly addressed, and rejected, the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. *Id*. at 457**.**

To be sure, while the general rule is that "any attempt to use violations of CPD General Orders or other policies and procedures as prima facie evidence of a constitutional violation," there "may be other circumstances in which this kind of evidence is admissible." *Gonzalez v. Olson*, 2015 WL 3671641, at *13 (N.D. Ill. June 12, 2015); see also *Ratliff v. City of Chicago*, 2012 WL 5845551, at *2 (N.D. Ill. Nov. 19, 2012) (explaining that "to the extent that the door [to admitting evidence of general orders, rules, and policies] remains open under *Thompson*, it is only slightly ajar"). The admissibility of such evidence hinges primarily on (a) whether the

evidence is relevant, and (b) the extent to which the evidence might prejudice the jury.[1] See Fed. R. Evid. 401, 403.  The proponent of such evidence "carries a heavy burden under FRE 401 and 403." *Gonzalez*, 2015 WL 3671641, at *13.

If Plaintiff wishes to introduce at trial any evidence of this nature, it will be incumbent on her to identify the particular order or policy that she believes to be relevant.  In the example used by Plaintiff in her response brief, she notes that the Defendant officers may testify that they acted in a certain manner based, in whole or in part, on their experience and training.  Such testimony is not uncommon, and Plaintiff is correct in observing that she must be permitted to cross-examine on the issue.  But in the vast majority of cases, officers do not cite specific rules or general orders and there is no need to inject any specifics into the cross-examination.

At present, Plaintiff has not identified any particular order, rule, or regulation on which she seeks to examine Defendants.  The Court cannot rule on this issue in a vacuum. Accordingly, ruling on Defendants' motion is deferred.  In all likelihood, the risk of prejudice based on the potential for running afoul of *Thompson*, confusing the issues for the jury to decide, and wasting their time with a confusing side show (see *Ratliff*, 2012 WL 5845551, at *3) will vastly outweigh the limited probative value of evidence relating to the use of rules or policies for impeachment of the defendant officers to support a claim for punitive damages.  See *Scott v. Suelter*, 2013 WL 2181128, at *4-*5 (C.D. Ill. May 20, 2013) (barring introduction of such evidence and concluding that "the jury will be able to determine whether punitive damages are warranted based upon the evidence of what occurred during the incident in question"). Nevertheless, the Court will not categorically foreclose such evidence in a pre-trial ruling. Should either party seek to introduce any evidence of this nature during trial, counsel should

---

[1] The concern is that a jury might mistake evidence that an officer violated a policing standard as evidence that the officer also violated the Constitution.  In certain instances, this concern can be addressed by instructing the jury as to the permissible uses of the evidence in question.

raise the issue as early as possible in the trial to allow the Court to rule on its admissibility outside of the presence of the jury.

**B.    Defendants' Motion in Limine No. 2: Conspiracy, Code of Silence, or Blue Wall**

Defendants seek to bar Plaintiff from arguing that a conspiracy existed, since Plaintiff has not alleged the existence of a conspiracy in this case and there is no evidence to support an allegation of conspiracy. Defendants also seek to bar any allegations of a police "code of silence," that police officers cover up for other police officers, or that there is a "blue wall." Defendants argue that there is no evidence to support such allegations and that speculation regarding the "general nature of police officers" would be prejudicial to Defendants. Plaintiff responds that even without an independent conspiracy claim, she has brought a failure to intervene claim against several of the Defendant officers and thus it is reasonable to argue that those officers covered up the wrongdoing of their colleagues.

Defendants' motion is granted in part and denied in part. "District courts often exclude *generalized* evidence of a code of silence, but permit plaintiffs to develop the theme that a code of silence existed among the particular officers involved in the events underlying the complaint." *Hillard v. City of Chicago*, 2010 WL 1664941, at *3 (N.D. Ill. Apr. 23, 2010) (collecting cases). Thus, even though Plaintiff has not brought an independent conspiracy claim, to the extent that Plaintiff focuses on the particular Defendant officers and witnesses involved in this case, she may explore the possibility that Defendants are biased because of their loyalty to one another. See Fed. R. Evid. 607 ("Any party * * * may attack the witness's credibility."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). Accordingly, to the extent that

Plaintiff focuses on the Defendant officers involved in this case, she may explore the possibility that Defendants are biased because of their loyalty to one another, but *not* to other police personnel who are not involved in this case. See *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (precluding "code of silence" references generally, but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case); *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (same); *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (same); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (same). Generalized allegations related to other police personnel who are not involved in this case are not relevant and are akin to impermissible propensity evidence. See *Martinez*, 2016 WL 3538823, at *7 (precluding "code of silence" references generally, but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case); *Gonzalez*, 2015 WL 3671641, at *14 (same); *Bruce v. City of Chicago*, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011) (same); *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (same); see also *Hillard*, 2010 WL 1664941, at *3 ("Even absent a conspiracy claim, Plaintiff is entitled to some leeway to argue the defendant officers and witness officers are covering for each other.").

**C.    Defendants' Motion in Limine No. 3:  Motion to Bar Evidence of Unrelated Police Misconduct**

Defendants move in limine to bar testimony, evidence, or argument regarding allegations of police misconduct by officers unrelated to this incident—namely, highly-publicized incidents involving Chicago Police Officers. Plaintiff interposes only a narrow and contingent objection that would arise only if Defendants' were to offer character evidence or testimony of their own. In reply, Defendants disavow any intention of doing so. Accordingly, this motion is provisionally granted. See Fed. R. Evid. 403; *Rodriguez v. Cervantes*, 2009 WL 3460100, at *2

(N.D. Ill. Oct. 20, 2009) (granting a similar motion); *Morrow v. City of Chicago*, 2011 WL 494577, at *1 (N.D. Ill. Feb. 7, 2011) (same).

### D. Defendants' Motion in Limine No. 4: Motion to Bar Evidence of General Allegations of Police Misconduct

Defendants' motion to bar evidence of general allegations of police misconduct, too, is generally agreed. In the briefing on this motion, the parties have alluded to the question of whether any testimony by Defendants about the general risks of their job would open the door to a response focusing on the occasional abuses of power perpetrated by officers in doing that job. In its ruling on Plaintiff's motion in limine 5, the Court has set out the parameters under which any testimony about the Defendant officers doing their jobs should come in at this trial. Provided that those parameters are respected, there will be no opening of the door and no need for any further ruling on this subject.

### E. Defendants' Motion in Limine No. 5: "Sending a Message" to the City

Defendants also seek to bar any reference to "sending a message" to the City or punishing the City. Defendants contend that this "sending a message" argument is an improper request for punitive damages from the City and unfairly prejudicial. Plaintiff concedes that she cannot seek punitive damages from the City but argues that she should still be able to ask the jury to "send a message" to the City.

Defendants' motion is granted in part and denied in part. Plaintiff is permitted to argue that she is attempting to deter Defendant officers and other police officers from misconduct. See *Martinez*, 2016 WL 3538823, at *14 ("[Plaintiff] may argue that punitive damages are appropriate to serve as an example to other officers that they should not do *what Defendants did in this case*[.]"); *Betts*, 784 F. Supp. 2d at 1033; *Bruce*, 2011 WL 3471074, at *6. However, any argument that she would like to "send a message" to the City itself implies that the City has a

policy or practice of condoning such misconduct, which is not being addressed in this trial, since there is no *Monell* claim. Therefore, Plaintiff is barred from making any argument that the jury should "send a message" to the City, but may argue that the jury should send a message to the Defendant officers and others like them.

### F.    Defendants' Motion No. 6:  Bar Evidence of Improper Discipline

As with Defendants' motions in limine Nos. 3 and 4, Plaintiff stakes out only a limited contingent objection to respond in kind if Defendants' open the door with character evidence. Again, Defendants state that they have no such intention.  Accordingly, the motion is provisionally granted.

### G.    Defendants' Motion No. 7:  Bar Evidence Regarding Defendants' Reporting of Other Misconduct

Defendants request exclusion of any evidence or argument regarding whether any Defendant ever reported misconduct in cases other than this one.  Plaintiff notes that she has a failure to intervene claim and thus must be permitted to inquire as to what steps, if any, certain Defendants (Arroyo, Davidson, and Poniatowski) took during the arrest and detention of Plaintiff giving rise to this lawsuit.  The Court agrees that any reporting of misconduct (or lack thereof) relating to the interaction between Plaintiff and Defendants at issue in this case is relevant.  But questioning as to whether any of the Defendants has reported misconduct on any other occasion or in relation to any other citizen-police encounters is problematic for several reasons.  To begin with, it almost certainly would be impermissible propensity evidence.  In addition, and just as importantly, it would lead to one or more sideshows, with each side exploring the circumstances of the other, unrelated incident to explore whether the officer should have reported that incident to superiors or other authorities.  These sideshows raise a risk of confusion and waste of juror

time out of proportion to any probative value they might have (see FRE 403). Accordingly, the motion is granted as to incidents unrelated to this case.

### H.      Defendants Motion in Limine No. 8:  IPRA or Internal Investigations

Subject to the caveat that Plaintiff takes issue with the veracity of the reports generated by the Defendant officers as a result of this incident—a separate issue not targeted specifically by Defendants' motion—Plaintiff agrees not to present any evidence or argument criticizing any investigation by the City or any of its agencies, assuming any such investigation took place. This motion therefore is unopposed and granted.

### I.      Defendants' Motion No. 9:  Indemnity

Defendants move to bar Plaintiff from arguing that the City will indemnify the Defendant officers, arguing that any evidence as to indemnification is irrelevant and could lead to a higher award from the presumably "deep pockets" of the City. Plaintiffs argue that they are seeking punitive damages, and thus the jury should be informed that the City is obligated to indemnify Defendants for compensatory but not for punitive damages. Their concern is the converse of Defendants—namely, that the jury will make a lower award based on the presumably "shallow pockets" of the Defendant officers.

The Court will follow the same path that it has in all of its prior Section 1983 cases in regard to this issue. "In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible."). However, if a defendant who benefits from a right to indemnification nevertheless claims an inability to pay

damages, the defendant is deemed to have "opened the door" to evidence of indemnification. See *Jones*, 2017 WL 413613, at *4 (explaining that in general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages award, but allowing plaintiff to introduce evidence of the City's indemnification if Defendants open the door by presenting evidence of their financial condition); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030–31 (N.D. Ill. 2011) same); *Gonzalez*, 2015 WL 3671641, at *7 (same).

Thus, Defendants' motion is provisionally granted. Evidence of indemnification is inadmissible, unless Defendants open the door by bringing their personal financial circumstances into the case or suggesting any hardship on them in conducting the defense. If Defendants choose to "apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages." *Galvan v. Nordberg*, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006). Thus, if Defendants offer evidence of their financial circumstances, the Court will instruct the jury that the City indemnifies for compensatory damages, but not for punitive damages, and that the jury is to consider Defendants' financial information only for its valuation of the punitive damages, if any, that it would award in this case.

**J.      Defendants' Motion in Limine No. 10:  Bar Undisclosed Witnesses**

Defendants move in limine to bar Plaintiff from presenting witnesses at trial who were not disclosed in Plaintiff's Rule 26(a)(1) disclosures. Plaintiff agrees, provided that the prohibition is mutual. It will be – therefore, the motion is granted.

**K.      Defendants' Motion in Limine No. 11:  Medical Testimony**

Defendants move to bar Plaintiff from rendering testimony about medical diagnoses or from using other medical terminology.  Plaintiff responds that she intends only to testify with respect to her subjective impression of her injuries and will do so consistent with Rules 701 and 702.   In reply, Defendants acknowledge that Plaintiff should be able to discuss her injuries in her testimony.   The parties thus appear to be in agreement with each other, and more importantly, with the current state of the law.  On the one hand, "courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition."  *Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 929 (N.D. Ill. 2005).  As the Seventh Circuit has explained, given "the uniquely subjective nature of pain," a lay witness may rely on "his own testimony to prove his pain and suffering." *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (finding that there was sufficient evidence to support jury's verdict for plaintiff in excessive force case, where the plaintiff "testified that [the defendant] beat him up and that it hurt really bad").   On the other hand, Plaintiff will not be allowed to (1) provide a medical diagnosis of her injuries, or (2) testify that the alleged beating proximately caused her medical problems, because this goes beyond lay testimony based on Plaintiff's rational perceptions. Cf. *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) (testimony by employee regarding his general medical problems did not suggest that employer caused these problems, and, thus, was admissible in Title VII action to show damages arising out of employee's loss of medical insurance after his change in employment status, despite employer's objection that employee did not have any medical expertise).   Given the apparent accord of the parties' positions and the law on this issue, Defendants' motion is granted.

**L.      Defendants' Motion in Limine No. 12:  CPD Personnel Paid to Testify**

Defendants move in limine to bar any implication or testimony that Chicago Police Department personnel are being paid by the City of Chicago to appear in court and testify. Defendants' motion is provisionally granted.  The probative value, if any, of evidence that police personnel are being paid their normal wage to appear in court is substantially outweighed by the potential prejudice of that argument (*i.e.*, a suggestion that by being paid their normal wage, the officers' testimony is more biased in favor of Defendants than it would be if they were not being paid at all).  See Fed. R. Evid. 403.

**M.      Defendants' Motion in Limine No. 13:  Plaintiff's Lost Wages**

Defendants next move in limine to bar Plaintiff from testifying at trial in support of any claim for past and future lost income.  Defendants point out that they requested that Plaintiff produce in discovery any documents (tax returns, banking records, W-2s, etc.) that would support evidence of lost wages, but that no such document has ever been provided.  Plaintiff does not dispute her failure to provide anything tangible during discovery.  Nevertheless, Plaintiff submits that she can testify regarding employment opportunities that she missed as a result of the incident giving rise to this lawsuit.  As explained below, Defendants' motion is granted in part and denied in part.

As a consequence of her failure to produce documentary evidence in support of a lost wage claim, Plaintiff will be barred at trial from introducing any such documents that she may now have in her possession.  See *Malone v. TCT Ministries, Inc.*, 2010 WL 4177792, at *3 (S.D. Ill. Oct. 19, 2010).  Without such evidence, her testimony of lost opportunities may be less compelling.  And while Defendants are correct that Plaintiff's deposition testimony lacks clarity in regard to the employment-related consequences she claims to have suffered as a result of her

encounter with Defendants, her testimony was not so lacking in substance to prohibit the claim altogether. Moreover, Plaintiff's deposition transcript will be usable for impeachment should her testimony at trial diverge materially from what she said in 2016 concerning lost wages and opportunities.

**N.      Defendants' Motion in Limine No. 14:  Arrest Without Warrant**

Defendants move in limine to exclude testimony that the officers failed to obtain a search warrant prior to entering the Plaintiff's residence. Defendants' motion is denied. See *Martinez v. City of Chicago*, 2016 WL 3538823, at *13 (N.D. Ill. June 29, 2016). The circumstances under which Defendants entered the residence are relevant to Plaintiff's unlawful entry claim. Plaintiff can ask the officers if they obtained a search warrant prior to entering the home, and Defendants can follow-up on cross-examination if necessary. This should be a *very* limited line of inquiry. In the unlikely event that the testimony or argument on this issue may require instruction to the jurors to ensure that they understand the relevance of any testimony relating a warrant (or lack thereof) to any issue of consequence at trial, either side may suggest an appropriate jury instruction.

**O.      Defendants' Motion in Limine No. 15:  Time to Trial**

The parties agree that neither side will make reference to the amount of time from case filing to trial – which in this case is slightly more than two years and thus not unusual in any event. Accordingly, this motion is granted.

**P.      Defendants' Motion in Limine No. 16:  City in Caption**

The City of Chicago is a Defendant in this case, and the City of Chicago shall therefore remain named in the case caption. This Court and others in this district have consistently denied motions in limine to strike the City of Chicago from the case caption in similar cases. See *Jones*,

2017 WL 413613, at *6 (citing *Wilbon v. Plovanich*, 2016 WL 890671, at *3 (N.D. Ill. Mar. 9, 2016); *Bruce v. City of Chi.*, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011)). Moreover, keeping the City of Chicago in the case caption will not be unduly prejudicial, given that the jury will already know that the Defendant police officers are employees of the City of Chicago.

Q.     **Defendants' Motion in Limine No. 17:  Training**

Defendants' final motion in limine seeking to bar evidence that the City improperly trains, disciplines, or investigates officer misconduct is granted in part and denied in part. If Defendants testify that their actions at the time of their interaction with Plaintiff were informed in part by their experience and training, Plaintiff may cross-examine as to what that experience and training entailed. However, Plaintiff may not otherwise offer evidence about whether the City improperly trains, disciplines, or investigates officer misconduct or about whether the City's policies and procedures are improper in and of themselves—*i.e.,* wholly apart from their application, if any, in this case.

IV.    **Conclusion**

For the reasons explained above, Plaintiff's motions *in limine* [52] are granted in part and denied in part: the Court grants (and provisionally grants) Plaintiff's motions Nos. 1, 2, 3, 4, 6, 7, 8, and 9; the Court grants in part and denies in part Plaintiff's motions No. 5. Defendants' motions *in limine* [51] also are granted in part and denied in part: the Court grants (and provisionally grants) Defendants' motions Nos. 3, 4, 6, 7, 8, 9, 10, 11, 12, and 15; the Court grants in part and denies in part Defendants' motions Nos. 2, 5, 13, and 17; the Court denies Defendants' motion Nos. 14 and 16; and the Court defers final ruling on Defendants' motion No. 1. This case remains set for a jury trial to commence on January 22, 2018.

Date:  January 18, 2018

Robert M. Dow, Jr.
United States District Judge